**MATHUES, U. S. Marshal, v. UNITED STATES ex rel. SCHWARTZ, and three other cases.**

Circuit Court of Appeals, Third Circuit.
April 25, 1927.

Nos. 3545-3548.

1. **Criminal law** ⟨⟩ **242(7)—Before one charged with crime may be removed from district of residence for trial, identity as person indicted must be established.**

Before one charged with crime may be removed from district of residence to another for trial, his identity as person indicted must be in some way established.

2. **Criminal law** ⟨⟩**242(7)—Evidence held insufficient to identify defendant as person indicted in another district, so as to justify removal for trial.**

In proceeding to determine whether defendants should be removed to another district for trial under indictment, evidence *held* insufficient to identify defendant as person named in indictment, and justify removal, in view of others by same name residing in same city.

3. **Criminal law** ⟨⟩**562—Verdict or judgment in criminal case must be sustained by substantial evidence.**

There must be some substantial evidence to sustain verdict or judgment in criminal case.

4. **Criminal law** ⟨⟩**242(8)—Rearrest and commitment of defendants for removal, after one commissioner had found want of probable cause and discharged them, held improper.**

Where one commissioner found that defendants, whom government was attempting to remove to another district for trial under indictment, had overcome presumption of probable cause raised by indictment, their immediate rearrest and hearing before different commissioner, who found probable cause and committed defendants to jail pending warrant of removal, was improper.

5. **Criminal law** ⟨⟩**242(7)—In removal proceeding, identification of defendants and certified copy of indictment raised presumption of probable cause.**

In removal proceeding, identification of defendants and admission of certified copy of indictment raises presumption of probable cause, and burden then shifts to defendants.

6. **Habeas corpus** ⟨⟩**92(1)—Habeas corpus hearings should be confined to question of jurisdiction, except in cases involving conflict of jurisdiction, treaty rights, and double jeopardy.**

Hearings on habeas corpus should be confined to single question of jurisdiction, except in cases involving conflict of jurisdiction between state and federal authorities, treaty rights of United States, and cases of double jeopardy.

Buffington, Circuit Judge, dissenting in part.

Appeals from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson and J. Whitaker Thompson, Judges.

Separate writs of habeas corpus by the United States, on the relation of Charles Schwartz, of Jacob Silberstein, of Joseph Pomerantz, and of Nathan Klawansky, alias Nathan Sawinski, against W. Frank Mathues, United States Marshal, Eastern District of Pennsylvania, were heard with the applications of the government for warrants of removal. From orders discharging the relators from custody (12 F [2d] 787), the respondent appeals. Affirmed.

George W. Coles, U. S. Atty., of Philadelphia, Pa., A. E. Bernsteen, U. S. Atty., of Cleveland, Ohio, and Henry B. Friedman, Asst. U. S. Atty., of Philadelphia, Pa., for appellant.

J. Paul MacElree and Benjamin M. Golder, both of Philadelphia, Pa., for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This is an appeal of the United States from orders discharging the relators from the custody of the United States marshal, who held them for removal from the Eastern district of Pennsylvania to the Northern district of Ohio.

On March 15, 1926, Schwartz, Silberstein, Pomerantz, and Klawansky were indicted, with 108 others, by a grand jury sitting in the United States District Court at Cleveland, in the Eastern division of the Northern district of Ohio, for having taken part in a nation-wide conspiracy to violate the National Prohibition Act (Comp. St. §

10138¼ et seq.). They were arrested in Philadelphia, and entered bail for their appearance in removal proceedings before a United States commissioner in accordance with the provisions of section 1014 of the Revised Statutes of the United States (Comp. St. § 1674). All the cases are similar, and so will be disposed of in a single opinion.

Schwartz, whose case will first be considered, appeared for hearing in accordance with his bail bond before United States Commissioner H. R. Manley, and was held by him, pending application to the District Judge for a warrant of removal. He thereupon sued out a writ of habeas corpus, and the government at the same time applied for a warrant of removal. Both matters were merged and heard together by Judge Dickinson. At the conclusion of the hearing he discharged Schwartz, on the ground that there was no evidence to warrant the finding that he was the person named in the indictment.

[1, 2] Before one charged with crime may be removed from the district of his residence to another for trial, his identity as the person indicted must in some way be established. If this cannot be done, the removal proceedings fail then and there. Was Schwartz identified as the person indicted in Ohio? No person appeared who could or did so identify him. The government relied upon the testimony of John A. Conwell, but he did not appear before the grand jury, and, so far as his testimony discloses, he does not know anything about the conspiracy, nor the evidence before the grand jury which tended to connect some Charles Schwartz with it. All that he knew was that Charles Schwartz, who was arrested in Philadelphia, was the man whom he had in mind when he swore to the affidavit on which the warrant of arrest was issued by the commissioner. His testimony is absolutely silent as to whether or not the Charles Schwartz arrested in Philadelphia and the Charles Schwartz indicted in Cleveland are one and the same person.

[3] Schwartz denied that he was the person indicted, and testified that he had never been in Cleveland; that he had never engaged in any phase of the liquor business; that he had never conspired with any of the defendants to violate the National Prohibition Act; that he had never known but one of the other 111 defendants, and he knew him years ago in the real estate business in Philadelphia. Then 10 other persons, each named Charles Schwartz, testified and gave their names, business, and residence in Philadelphia. Thus it was shown that there are at least 11 persons by the name of Charles Schwartz who reside in Philadelphia and are engaged in business there. Which one of these, if any, was indicted in Ohio, was not disclosed by the evidence. Any one or no one of the 11 might be the person the grand jury had in mind. The commissioner, therefore, erred in finding that the relator was the Charles Schwartz indicted, for there was no evidence before him upon which to base such finding. There must be some substantial evidence to sustain a verdict or judgment. Isbell v. United States (C. C. A.) 227 F. 788, 790; Rosenthal v. United States (C. C. A.) 18 F.(2d) 24, and the learned District Judge did not err in discharging Schwartz.

[4] Silberstein, Pomerantz, and Klawansky were arrested upon warrants issued by Commissioner Manley prior to the finding of the indictment against them in Cleveland, and were taken before Commissioner Howard M. Long, and entered bail for a further hearing. At that hearing the district attorney offered in evidence against each one of them a certified copy of the indictment, then called a witness, Harry Volpe, who identified them, and rested his case. Several hearings were thereafter held before Commissioner Long, and each of the relators flatly denied that he was guilty of conspiracy, or any of the acts with which he was charged in the indictment. A number of witnesses who are well acquainted with the relators testified that they were men of good reputation in the communities in which they live, and were honest and law-abiding citizens. After seeing and hearing them and their witnesses testify, Commissioner Long carefully considered the case, and concluded that the relators had overcome the presumption of probable cause raised by the indictment, and so discharged them on April 23, 1926.

While the relators were still under bail, and while Commissioner Long was considering the case, he expressed to the assistant district attorney a doubt as to the sufficiency of the government's case, in order to give him an opportunity to produce further evidence, if he could. But, instead of doing so, he had a warrant issued, on April 9th, for the arrest of the relators, and held in reserve for use before Commissioner Manley, in case the decision of Commissioner Long did not suit him. When Commissioner Long discharged the relators, the assistant district attorney had Commissioner Manley in the room where the hearing was being

held, and ordered the marshal to arrest them on the spot.

A hearing was then and there held before Commissioner Manley; that is, a certified copy of the indictment was admitted in evidence, and a witness identified the relators as the persons indicted. Bail was then entered for their appearance before Commissioner Manley one week later. At that adjourned hearing, a transcript of the testimony taken before Commissioner Long was admitted in evidence by Commissioner Manley, who immediately found probable cause that the relators were guilty of the charge against them, and committed them to the marshal, to be held in the Philadelphia county prison pending warrants of removal.

Thereupon the relators sued out writs of habeas corpus, and the government applied for warrants of removal. Both of these, as in the case of Schwartz, were merged and heard together before the District Judge, who held in substance that the rearrest of the relators, who had just been discharged by Commissioner Long, "without any apparent abuse of discretion upon his part," was, under the circumstances, an abuse of the criminal process.

"The two commissioners," he said, "are officers of the law, of co-ordinate jurisdiction, appointed by this court to exercise judicial functions under the provisions of section 1674, Comp. Stat., and the rule of comity followed by the courts having co-ordinate jurisdiction should be strictly observed by them. *Otherwise, there will be abuse of criminal process, and it will be made the instrument of oppression.*[1] It should not be open to the prosecution, after a hearing by one commissioner, before whom full opportunity has been afforded to present all the facts, and who, in the fair exercise of his discretion and in the absence of arbitrary conduct upon his part, has ordered the defendants' discharge, to bring the defendant before another commissioner upon the same state of facts. In re Wood [D. C.] 95 F. 288. As was said in that case: 'Where the hearing has been full and complete, the action of one commissioner in refusing to commit the defendant, unless such action has been arbitrary and in manifest disregard of his duty, ought not to be subject to review before a second commissioner.'" 12 F.(2d) 787.

[5] The identity of the relators and the admission of a certified copy of the indictment raised a presumption of probable cause and the burden then shifted to them. Unit-

ed States ex rel. Tassel v. Mathues, United States Marshal (C. C. A.) 11 F.(2d) 53; Beavers v. Henkel, 194 U. S. 73, 24 S. Ct. 605, 48 L. Ed. 882; Hyde v. Shine, 199 U. S. 62, 25 S. Ct. 760, 50 L. Ed. 90. Did they overcome this burden? Commissioner Long, who saw them and their witnesses, held that they did. He reached this conclusion after several hearings and deliberate consideration, and "without any apparent abuse of discretion on his part." Commissioner Manley, on the other hand, did not see nor hear the relators, nor their witnesses on the stand. He reversed Commissioner Long, and set aside his finding, without opportunity or time to consider the evidence upon which Commissioner Long based his conclusion. These latter proceedings were unusual, and did not tend to produce orderly administration of justice. The learned District Judge, however, did not base his conclusion, as the government seemed to believe, and argued, on the assumption that a discharge by a commissioner for want of probable cause was res judicata. He did say that in the interest of orderly procedure, the decision of one committing magistrate in the absence of special circumstances should be conclusive, on the same state of facts, upon another of co-ordinate jurisdiction. In re Wood (D. C.) 95 F. 288; United States v. Haas (D. C.) 167 F. 211; Ex parte Gagliardi (D. C.) 284 F. 190; Morse v. United States, 267 U. S. 80, 45 S. Ct. 209, 69 L. Ed. 522; United States v. Levy, 268 U. S. 390, 45 S. Ct. 516, 69 L. Ed. 1010.

[6] It is true, as the government urges, that hearings on habeas corpus should be confined to the single question of jurisdiction, except in cases involving a conflict of jurisdiction between state and federal authorities, treaty rights of the United States, and in case of double jeopardy. Ex parte Lange, 18 Wall. (85 U. S.) 163, 21 L. Ed. 872; Ex parte Royal, 117 U. S. 241, 6 S. Ct. 734, 29 L. Ed. 868; Henry v. Henkel, 235 U. S. 219, 35 S. Ct. 54, 59 L. Ed. 203; Rodman v. Pothier, 264 U. S. 399, 44 S. Ct. 360, 68 L. Ed. 759. But the hearing in these cases was on both the writ of habeas corpus and the application for a warrant of removal at the same time. The question of probable cause was therefore a proper subject of inquiry.

We do not find that the learned District Judges erred, and their orders are affirmed.

BUFFINGTON, Circuit Judge, dissents as to Silberstein, Pomerantz, and Klawansky.

---

[1] Underscoring is ours.